IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                     *Plaintiff*,<br>v.<br><br>ROGER GOLUBSKI,<br><br>                     *Defendant*. | Case No. 22-40055-TC &<br>22-40086-TC |

### MOTION TO MODIFY CONDITIONS OF RELEASE

Pursuant to 18 U.S.C. 3142, Roger Golubski moves the Court to modify his conditions of release to remove the requirement for home detention.

### PROCEDURAL BACKGROUND

On September 14, 2022, Roger Golubski was indicted in Case No. 22-40055 and arrested on the charges. Mr. Golubski was brought before this Court for an initial appearance on September 15. A detention hearing was held on September 19. Following a proffer of facts and argument, the Court granted pretrial release subject to conditions, including home detention. The Court imposed the same conditions of release in Case No. 22-40086 following Mr. Golubski's indictment on November 10, 2022.

Since the Court's original detention order, the government has produced thousands of pages of discovery. Counsel has reviewed the discovery and believes that the information contained therein justifies reconsideration of home detention as a condition of pretrial release.

## FACTUAL BACKGROUND

The charges filed in Case No. 22-40055 are premised entirely on allegations that cropped up during Rose and Lamonte McIntyre's widely publicized lawsuit seeking a multi-million dollar judgment against Wyandotte County based on claims that Mr. Golubski was a crooked cop engaged in sexual misconduct. The FBI learned of both S.K. and O.W. through the McIntyres' attorney, Cheryl Pilate. The timing and context of their allegations are incredibly suspicious.

On April 1, 2019, retired KCK police officer Henry "Sonny" Callahan, who held himself out as working with Ms. Pilate, visited O.W. and told her that he knew a "**real good lawyer**" for her and that there was "**millions of dollars in this thing**." Callahan told her, "**You need to talk to Cheryl so she can get you, you know to, you know to set up um money for [your] children and grandkids.**" Three days later, Callahan told O.W.'s boyfriend that **O.W. could get $200,000 or $300,000**. One week later, on April 11, 2019, O.W. met with FBI agents and alleged that Roger Golubski had sexually assaulted her.

S.K. first told the FBI that she was a victim of Roger Golubski on July 15, 2020, during a meeting hosted at Cheryl Pilate's office. Ms. Pilate, who personally informed the FBI about S.K., facilitated six meetings between S.K. and the FBI between July 15, 2020, and December 16, 2020—each at Ms. Pilate's office. S.K.'s allegations include claims that, if true, could be corroborated, such as being taken to the hospital from her middle school because she was hemorrhaging from a

miscarriage after becoming pregnant with Roger's child.  **To date, the prosecution has not produced any evidence corroborating such claims.**

The charges filed in Case No. 22-40086 can also be traced to Mr. McIntyre's legal team.  As Mr. McIntyre's attorneys sought to identify the true perpetrator of the crimes for which Mr. McIntyre had been convicted, they identified an individual connected to drug dealer Cecil Brooks and pursued rumors that Mr. Golubski was protecting Brooks.  **But, after years of investigation, the FBI found nothing more than rumors.**  In fact, discovery reveals that each of Mr. Golubski's co-defendants spoke with agents regarding their alleged connections to Mr. Golubski and each of Mr. Golubski's co-defendants denied that Mr. Golubski participated in criminal activity with them or in any of the criminal activity alleged to have occurred at the Delavan Apartments.  **They denied Mr. Golubski's participation in criminal activity even as they admitted to witnessing and/or participating in criminal conduct themselves**.

## THE 3142(G) FACTORS

(1)   The nature and circumstances of the offense charged.

Counsel acknowledges that the charges are serious.  But Mr. Golubski's co-defendants, who are accused of equally if not more egregious offenses than he, have been released without a requirement of home detention. Mr. Robinson and Mr. Roberson are accused of actively operating an underage sex-trafficking operation, where they beat and threatened to beat girls who did not agree to provide sexual services in exchange for shelter, drugs, or clothes.  Mr. Roberson stands specifically

accused of kidnapping and repeatedly raping, sodomizing, and threatening to kill a particular juvenile.  Both Mr. Robinson and Mr. Roberson have been ordered released pending trial.  Neither is required to spend that time on home detention. Neither has a location monitoring requirement.

Circumstances of the alleged offenses also warrant consideration. All conduct is alleged to have occurred well over two decades ago and under circumstances dramatically different from today.  The government and individual accusers claim Mr. Golubski accomplished crimes by virtue of access and power granted through his position as a KCKPD detective and captain.  Mr. Golubski has not occupied that position for more than twelve years.

## (2)   The weight of the evidence against the person.

Having reviewed all discovery produced to date, it appears that the charges against Roger Golubski are entirely based on uncorroborated allegations.  The allegations of decades' old conduct were made in an environment primed for collecting, encouraging, and promoting false accusations—during a media frenzy depicting Mr. Golubski as the center of police corruption in KCK and the key component to a winning habeas action and/or multi-million dollar settlement.

Mr. Golubski's accusers were handed to the FBI by an attorney pursuing a money judgment that hinged on painting Mr. Golubski as a dirty copy whose corruption was tied to sexual misconduct.  This begs the question of whether their allegations were raised twenty years ago or only after being approached by the McIntyres' representatives—individuals who secured Mr. McIntyre's release from

prison and who were seeking $100 million from Wyandotte County in civil litigation.

S.K. told FBI agents that, when she was 16 years old, she told her aunt what Roger Goubski had done to her. She claimed that she went with her aunt to the police station and her aunt reported it. **The prosecution has not produced any evidence to support this claim.** S.K. also told FBI agents that, after going to the police station, her aunt did not believe her claims.

O.W.'s boyfriend told FBI agents that O.W. told him an unnamed police officer "took advantage of" her, but only identified Roger Golubski after his name and image became prominent in the media as a result of the McIntyres' cases. O.W. did not report her claims to law enforcement until after the McIntyres filed their multi-million dollar civil lawsuit and Mr. Callahan suggested she could get money if she did.

The evidence produced thus far consists of uncorroborated claims of decades-old conduct made under circumstances where the accusers were overtly or implicitly baited with potential financial gain.

(3)     **The history and characteristics of the person.**

Mr. Golubski has no criminal history. He retired from the KCKPD in 2011. Mr. Golubski has lived in the same town for the majority of his life. His only close family lives nearby. He is not a traveler and does not possess a passport. He is poses no risk of flight.

Mr. Golubski is almost seventy years old and requires regular medical intervention. He is an insulin-dependent diabetic, administering four insulin injections daily. He also has late stage kidney disease, such that he requires dialysis three times per week. Any attempt to flee—and the resultant loss of this medical care—would be deadly.

Home detention is further jeopardizing his health. Since Mr. Golubski completed the cardiac rehabilitation services for his heart bypass surgery earlier this year, confinement in his small home means disregarding his physician's direction to continue rehabilitation on his own with regular exercise.

(4) **The nature and seriousness of the danger to any person or the community that would be posed by the person's release.**

At the September 19 detention hearing, defense counsel did not know that the FBI had been conducting surveillance of Roger Golubski since at least January of 2019 and continuing until his arrest. Surveillance was extensive, including a constant video feed of his home and multiple agents following him on various days. Surveillance did not reveal that Mr. Golubski was participating in any malevolent or dangerous activity. To the contrary, it revealed that he lived an ordinary life as a retiree. As surveillance continued, reports regularly included the following statement: "**At present, he is not considered to be dangerous**, although the neighborhoods he frequented during his tenure as a police officer are considered dangerous."

## CONCLUSION

Roger attends court and meets with counsel as needed.  He poses no danger to the community.  Home detention is an unnecessary condition of pretrial release and should be removed.

        Respectfully submitted,

        Joseph, Hollander & Craft LLC
        *Attorneys Defendant Roger Golubski*

By:   s/ Christopher M. Joseph
        Christopher M. Joseph, #19778
        1508 S.W. Topeka Blvd.
        Topeka, Kansas 66612
        (785) 234-3272
        (785) 234-3610 fax
        cjoseph@josephhollander.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2022, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

        s/ Christopher M. Joseph
        Christopher M. Joseph