## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22-40055-TC and |
| v. | ) | Case No. 22-40086-TC |
| | ) | |
| ROGER GOLUBSKI | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO OBJECTIONS OF LAMONTE MCINTYRE AND ROSE LEE MCINTYRE TO DEFENDANTS' SUBPOENA AND MOTION TO QUASH**

Defendant Golubski's subpoena – seeking "all discovery" from a separate civil case without respect to relevance -- lacks any basis in the facts or the law and must be quashed.

Golubski argues that he merely seeks to step into the "shoes of his civil defense counsel."  This facile argument runs aground on the specific language of the Protective Order in the *McIntyre* civil case and is fully torpedoed by the law pertaining to Fed. R. Crim. P. 17(c).  (*See* Case No. 22-40055, Doc. 29 at 4-9, Doc. 31 at 7-8).   Even if these obstacles could somehow be overcome, the subpoena still must be quashed because it flings open the door to other far-fetched demands for documents. If Golubski is granted access to the McIntyres' confidential documents, then, presumably, the other three defendants in Case No. 22-40086 could also claim entitlement to those same documents. Moreover, Golubski's request for confidential records, including the medical and mental health records of Lamonte McIntyre and Rose McIntyre, could, if granted, establish precedent for obtaining the confidential records of *any* victim in these cases.

1

Golubski's persistent pursuit of the McIntyres' confidential documents, even in the face of their total lack of relevance, also gives rise to another problem – an apparent conflict of interest.  Following Lamonte McIntyre's criminal trial, from 1995 through early 1997, Lamonte was represented by an attorney, Lindsey Erickson, who is now a partner at the *same firm* as Golubki's present counsel. In 1996, Ms. Erickson was the first attorney to obtain affidavits and present testimony that supported Lamonte's claim of wrongful conviction.

The present subpoena must be quashed for multiple reasons:

1. Golubski's counsel cannot simply slip "in the shoes of civil defense counsel" because the Protective Order in *McIntyre v Unified Government*, No. 18-cv-02545 expressly limits access to confidential documents, stating they "are protected from disclosure outside ***this*** litigation." (Mtn to Quash, Ex. 2, at 1). Although the Protective Order was subsequently amended, the court in *McIntyre* made clear that its amendment pertained to documents in the *public interest*, and it therefore denied the request for Lamonte McIntyre's prison records, a confidential document.  (Mtn. to Quash, Exs. 1, 2, 3).

2. The scope of criminal discovery is far more limited than the scope of civil discovery, and courts have repeatedly stated that Federal Rule of Criminal Procedure 17(c) is not intended to provide a means of discovery. This point has already been extensively briefed in the motions to quash.  (*See* Case No. 22-40055, Doc. 29 at 4-9, Doc. 31 at 7-8).

3.  Lamonte McIntyre and Rose McIntyre are not anticipated to be witnesses in the criminal cases pending against Golubski. Their confidential documents are therefore totally irrelevant to these criminal charges.

4.  Permitting Defendant Golubski to obtain medical, mental health and other confidential records of the McIntyres would open the door to Golubski (or the other defendants) seeking such sensitive records of *any* victim in either of these cases.

5.  As discussed further below, Golubski's pursuit of the McIntyres' records raises a clear conflict of interest, as a law partner of Golubski's current counsel previously represented Lamonte in post-trial proceedings and two appeals attacking his wrongful conviction.

<u>RESPONSE TO FACTUAL STATEMENT</u>

Golubski appears to suggest that his conduct was not known to federal investigators prior to 2014. This is not true. Golubski's conduct had long been known to federal law enforcement, including retired FBI agent Al Jennerich.  *See e.g.,* Adler, "No Justice: How Lamonte McIntyre Was Wrongly Convicted of Double Murder," Kansas City Star, 10/25/2016, https://www.kansascity.com/news/local/article240965696.html. Further, a review of the court file in the *McIntyre* case indicates that Golubski's conduct was known to his police department colleagues since at least the 1980s. *See, e.g.,* Case No. 18-cv-02545, Doc. 624-66 (Declaration of Hausback)

Also contrary to Golubski's repeated assertions, the federal criminal cases are *not* "inextricably intertwined" with the *McIntyre* civil case.  The criminal cases have nothing to do with Mr. McIntyre's wrongful conviction and the injuries he and Rose McIntyre suffered. The fact that there are some common witnesses does not make the cases "intertwined."  To the contrary, it simply shows that Golubski's alleged conduct provides a basis for both criminal and civil liability.

Also contrary to Defendant's assertions, the evidence presented in *McIntyre* is not simply "theoriz[ing]." (Case No. 22-40055, Doc 33 at 4) Plaintiffs' claims are not mere "theory." As shown by the summary judgment filings, they are supported by dozens of exhibits, including deposition testimony, sworn affidavits, court transcripts and other documents.  (Case No. 18-02545).

 The allegation that Lamonte was wrongfully convicted first arose during McIntyre's 1996 post-trial proceedings, where he raised the issue of his innocence and presented: (1) an affidavit from Niko Quinn recanting her trial testimony; and (2) testimony from Stacy Quinn stating she was certain that Lamonte was *not* the shooter. (Exs. 4, 5, and 8)[1]  Stacy Quinn had the best view of the shooter but her account was never documented by Golubski. (Ex. 5 at 22, Ex. 4 at 2) She testified in a post-trial hearing that she could clearly see the shooter, that Lamonte was definitely not the shooter and that she came forward because she didn't want the "wrong person to go to jail."  (Ex.

---

[1] The exhibits are numbered starting with number "4" because exhibits 1 through 3 were attached to the Motion to Quash.

5 at 21-22; excerpt) Niko Quinn stated in her affidavit that she testified falsely when she identified Lamonte as the shooter. She stated that she had been pressured by police. (Ex. 8 at 1).

Lamonte McIntyre's counsel during these proceedings was Lindsey Erickson, a law partner of Golubski's current attorney.

Ms. Erickson stated in the Motion for New Trial that Stacy Quinn had "felt compelled to come forward" because the wrong person was in jail, and that Niko Quinn had "no doubt" that Lamonte McIntyre was not the shooter. (Ex. 4).

In addition to filing the Motion for New Trial and representing Lamonte at the subsequent hearing, Ms. Erickson also represented Lamonte in his direct appeal and in the appeal following the denial of his motion for new trial. (Exs. 6, 7).  Ms. Erickson's name appears throughout the *McIntyre* civil file, including in Lamonte McIntyre's deposition, where he testified that he first heard about Niko Quinn's new statement from his then-attorney, Lindsey Erickson. He stated: "I talked to Lindsey. She used to write me a lot."  (Ex. 9 at 172:15-16, 175:13).  In the *McIntyre* proceedings, Ms. Erickson is also referenced by Rose McIntyre, who retained her to represent Lamonte.  *See* Ex. 10; Ex. 11, ¶¶ 28-30.  In Rose's affidavit, filed in the Wyandotte County innocence case, No. 2016-CV-508, and also in the federal case, Ms. McIntyre described how she retained Lindsey Erickson to pursue Lamonte's innocence claim. She also testified in her deposition about her contacts with Ms. Erickson.  (Ex. 10 at 175:13-17, 206:24-220:6).

Lastly, Ms. Erickson herself signed an affidavit that was submitted in support of Mr. McIntyre's 2016 innocence case, where she described her representation of Lamonte, including her contacts with Niko Quinn and Stacy Quinn and the fact that both had stated the shooter was not Lamonte. (Ex. 12).

Ms. Erickson has been a partner at Joseph, Hollander & Craft, LLC for several years. Because Golubski's attorney, Chris Joseph, insists that (1) Lamonte McIntyre and Rose McIntyre are somehow relevant to the criminal charges against his client, and (2) he is entitled to all civil discovery documents concerning them, Golubski's counsel has laid the *very foundation for a conflict of interest*. This conflict of interest must be addressed. The Kansas Rules of Professional Conduct suggest that counsel must either withdraw from his representation of Golubski or abandon his pursuit of the McIntyres and their confidential documents.

Kansas Rule of Professional Conduct 1.9, pertains to the duties to former clients and states that:

A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interest are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Chris Joseph's partner, Lindsey Erickson, represented Lamonte McIntyre, who is her former client. While the criminal cases against Golubski are not the "same matter" as the criminal case against Lamonte McIntyre, they may be considered "substantially related" under this Rule, especially in light of Mr. Joseph's demands for the McIntyres'

documents as well as his repeated claim that the criminal cases against Golubski are somehow "inextricably intertwined" with the McIntyre's civil case seeking damages. Lastly, it is clear that the interests of Golubski are "materially adverse" to those of Lamonte McIntyre and Rose McIntyre.

The next step in the analysis requires the consideration of Kansas Rule of Professional Conduct 1.10, which applies to imputed conflicts of interest when lawyers are associated in a firm.  Rule 1.10 states:

> While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9….

Consideration of both Rule 1.9 and Rule 1.10 leads to the clear conclusion that Golubski's attorney, by claiming the cases are inextricably intertwined and by seeking all McIntyre discovery, has laid the foundation for a clear conflict of interest.  Rule 1.9 would allow an attorney to proceed with such a representation only if "the former client gives informed consent, confirmed in writing."  Neither Lamonte McIntyre nor his mother Rose McIntyre give such consent.

Golubski also claims, falsely, that because he obtained the McIntyres' confidential documents in the civil case that he "has always been entitled to these documents" as if they are some type of lifetime grant. (No. 22-cr-40055, Doc. 33 at 6) Such a bold claim flies in the face of the Protective Order, which makes clear in the first paragraph that the documents are to be "used *only* for the purposes of prosecuting or defending *this action* and any appeals." (Doc. 31-2, Protective Order, No. 18-cv-02545) (emphasis added).

Golubski next claims that "no harm" will result from his criminal defense counsel obtaining "equal access to subpoenaed materials" as was granted to his civil defense counsel. (*See* Doc. 33 at 2, 6, 12).   This claim is false.  Both Lamonte McIntyre and Rose McIntyre suffered numerous though necessary intrusions into their privacy while litigating their civil case.  Lamonte's wrongful conviction and the harms they suffered are not part of the two criminal cases against Golubski.  Permitting their confidential and sensitive records to be viewed or used at will by Golubski's counsel or by Golubski himself serves no purpose other than to cause further trauma to Lamonte McIntyre and Rose McIntyre.

Lastly, Golubski asserts that the well-established test for Rule 17(c) subpoenas set forth in *United States v. Nixon*, 418 U.S. 683, 698-99 (1974) does not apply "when a defendant subpoenas a third party."  Golubski's argument is bereft of persuasive or meaningful authority and should be rejected.  With respect to this point, Lamonte McIntyre and Rose McIntyre agree with and adopt the arguments asserted in the Reply filed by the Non-Party Victims. (Docs. 36, 59)

<u>CONCLUSION</u>

Based on the arguments and authorities stated above, Movants Lamonte McIntyre and Rose McIntyre respectfully request that this Court quash the subpoena previously granted by this Court and issued by Defendant Golubski.

Respectfully Submitted,

 /s/  Cheryl A. Pilate
Cheryl A. Pilate, KS Bar #14601
Morgan Pilate LLC
926 Cherry Street
Kansas City, Missouri 64106
Telephone:  816-471-6694
Fax:  816-472-3516
Email: cpilate@morganpilate.com

CERTIFICATE OF SERVICE

I, Cheryl A. Pilate, hereby certify that the above and foregoing was served on March 1, 2023, on all counsel of record via the court's electronic filing system.

/s/ Cheryl A. Pilate