

## AFFIDAVIT OF LINDSEY P. ERICKSON

I, Lindsey P. Erickson, being of sound mind and lawful age, hereby state on my oath as follows:

1. My name is Lindsey P. Erickson, and I am a trial and appellate attorney, a profession in which I have been employed for 13 years.

2. In 1995, I was employed by the law firm Cornwell & Edmonds in Overland Park, Kansas, when the firm was retained to represent Lamonte McIntyre in his direct appeal to the Kansas Supreme Court following his conviction on two counts of first degree murder in Wyandotte County District Court. I also represented Mr. McIntyre in a motion for new trial filed in March 1996 after new evidence became available indicating that Mr. McIntyre was not present at the scene of the double homicide.

3. I recall that Lamonte was convicted despite an extremely credible alibi defense placing him more than a mile from the murder scene at the time of the crime in Kansas City, Kansas. Numerous witnesses described the many hours Lamonte spent at his aunt's home and a neighboring home during the afternoon that the crime occurred.

4. I also recall that Lamonte McIntyre became a suspect in the case as a result of two mistakes: First, there was a mistaken identification by an eyewitness to the shooting who at the time of the shooting did not know Lamonte McIntyre but told police that the shooter looked like a different person named "Lamonte." Second, police investigators mistakenly selected Lamonte McIntyre's photograph from his juvenile arrest records and used it in a photo "lineup" and thereby induced the eyewitness to implicate Lamonte McIntyre.

5. No physical evidence tied Lamonte McIntyre to the murders, Lamonte did not know the victims or their families, no motive was presented, and we believed that the trial testimony against Lamonte McIntyre by two eyewitnesses was very weak.

6. Our direct appeal to the Kansas Supreme Court raised four issues from decisions of the trial court and the conduct of the prosecutor. We asked the Supreme Court to order a new trial for the district court's failure to give a cautionary eyewitness instruction to the jury, and we challenged the sufficiency of the evidence.

7. While the appeal was pending, relatives of the victims began to have strong reservations about Lamonte's conviction, especially after they sighted the true killer on several occasions in public. For example, eyewitness Niko Quinn, who was the first cousin of one victim and a distant cousin of the other, by affidavit recanted her trial testimony identifying Lamonte McIntyre and offered to point out the true killer to authorities.

8. It was very clear to me that we needed to interview all possible eyewitnesses in the case, and we knew that Lamonte's trial counsel had not been able to find all of the eyewitnesses.

9. One such eyewitness was Stacey Quinn, who was Niko Quinn's sister and was also a first cousin of one of the murder victims.

**EXHIBIT**
22-40055-TC; 22-40086-TC
**12**

10. Stacy Quinn remembered what the killer looked like, and in the evidentiary hearing for Lamonte's motion for new trial she firmly testified that Lamonte McIntyre was not the shooter after viewing numerous photographs of him. She also testified that she had seen the true killer at large in Kansas City, Kan., since the trial.

11. Although Lamonte's direct appeal from conviction was unsuccessful, and we were also unsuccessful in litigating Lamonte's motion for new trial through appeal before the Kansas Supreme Court, I believe that if the trial court had had all the evidence we assembled that his case would have been dismissed or the jury would have found him not guilty.

Further your affiant sayeth not.

Date: 2/5/15

Lindsey Erickson

State of Kansas

County of Johnson

Subscribed and sworn to before me on this 5th day of February 2015

Julie Postlewait
Notary Public

JULIE POSTLEWAIT
Notary Public - State of Kansas
My Appt. Exp. 2-4-18